**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA,**

                **Plaintiff,**

 v.

**DEVANTE NANCE,**                                            **20-CR-29A**

                **Defendant.**

---

### REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.

### PRELIMINARY STATEMENT

The defendant, Devante Nance ("the defendant"), is charged along with a number of co-defendants in a multi-count Superseding Indictment with having violated Title 21 U.S.C. § 846 (Count 1) and Title 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count 2).  Dkt. #24.  He has filed a motion claiming that he was "illegally detained and subjected to a forcible search [by Buffalo Police officers] in violation of his rights that are afforded him under the Fourth Amendment to the United States Constitution and Article I, Section 12 of the New York State Constitution" thereby requiring that the evidence

seized from him must be suppressed as evidence at his trial.   Dkt. #185, pp. 9-10, ¶ 27.   The government filed its opposition to this motion.   Dkt. #195.   After hearing oral argument on the motion, this Court scheduled an evidentiary hearing on the suppression issues.   The hearing was held, and a transcript of the proceedings was filed on November 2, 2021.   Dkt. #293.   The defendant filed a post-hearing memorandum on December 3, 2021 and the government filed its memorandum in opposition on that date as well.   Dkt. #s 312, 313, respectively.   The matter was then taken under advisement.

## **FACTS[1]**

On February 5, 2019, Buffalo Police Officers Jake Giarrano and Ronald Ammerman were assigned to patrol duty in C District of the City of Buffalo and were working the 3:30 p.m. – 1:30 a.m. shift.   T. 7-8.   Because this was the first day back on duty after being off for three or four days, Officer Giarrano began his shift by going "through the reports of crimes that [had] occurred on [his] days off" by using the police department computer.   T. 8-9.   He "clicked on an assault report from 28 Norway because [their] shootings, if they are non-fatal, show up as assaults."   T. 10.   When looking at the report on the computer, it is "tabbed" and "so you click on a person involved and it would give you the offender and the complaint."   There is "a separate tab for the incident, where it occurred, the address, street, and it would elaborate on

---

[1] The facts are taken from the transcript of the evidentiary hearing and references to it are designated "T" followed by the appropriate page number(s).

2

some of the information and then there is the charges and the narrative." T. 11-12. When Officer Giarrano viewed the computer report on February 5, 2019, the report indicated that an "investigation [was] pending." T. 12, 15, 64.[2] Officer Giarrano showed this report to Officer Ammerman and they ran the name of the assault suspect and "reviewed a photo of the suspect involved in the case" who turned out to be the defendant. T. 90-91, 111. See Government Exhibits 3 and 4. When Officer Giarrano reviewed the police report on February 5, 2019, it "stated that the complainant identified [the defendant] as the suspect [who assaulted him] and [the charge was] a felony assault. T. 16-17. However, no arrest warrant had been issued for the arrest of the defendant. T. 30, 100, 108.

      Officers Giarrano and Ammerman then commenced their patrol car patrol in C District by driving to Norway Street whereupon Giarrano observed the defendant walking towards 28 Norway and then enter a parked vehicle on the passenger side. T. 18-21, 92. Officer Ammerman pulled the patrol car alongside the parked vehicle that the defendant had entered. Officer Ammerman exited the patrol car and approached the parked vehicle on the driver's side and Officer Giarrano approached the parked vehicle on the passenger's side. T. 21, 93. The defendant was seated in the front passenger side of the vehicle and Officer Giarrano asked him for identification which the defendant handed to him which established his identity as Devante Nance, the same name that appeared as the "suspect" on the police report that Giarrano had read at the

---

[2] After the defendant was arrested on February 5, 2019, this report was updated by Central Booking and "investigation pending" got changed to "cleared by arrest." T. 15.

start of his shift.   T. 22-23, 34-35.   In the meantime, Officer Ammerman advised the driver of the parked vehicle that they "were [there] because your windows are too dark." He told him this is as a safety precaution because the passenger "was involved in a violent crime" so as "to keep it calm and peaceful."   T. 93-94.

After confirming the identity of the passenger, Officer Giarrano asked the defendant to exit the vehicle which the defendant did.   Officer Giarrano then conducted a "pat down" of the defendant and advised him that he was "wanted for an assault."   T. 23 45.   When Officer Giarrano attempted to remove a "satchel" that the defendant was wearing on his chest, the defendant "pushed off the patrol vehicle and attempted to flee northbound between the car he was in and [the] marked patrol car."   T. 23, 42.   Officer Ammerman was able to apprehend the defendant and in doing so, the defendant's "satchel came off onto the ground."   However, as it left the defendant's chest area, "both [officers] hands were able to kind of go into [the satchel] and [Officer Giarrano] was able to grab a vacuum sealed bag out of it."   T. 24.   He then dropped this bag into the patrol car through an open window.   The defendant was cuffed and placed in the back of the patrol car and taken to the station house "to speak with a detective."   T. 25-27, 45, 61.   The defendant was arrested on February 5, 2019 on the assault charge. T. 13, 27, 35, 58, 117.   When the defendant was brought to Central Booking, "the report technicians at Central Booking change[d]" the January 30, 2019 assault report from "investigation pending" to "cleared by arrest" of February 5, 2019.   T. 15, 30-31, 32-33, 39.   The January 30, 2019 assault report was further updated with information

4

relating to the February 5, 2019 arrest of the defendant by Officers Giarrano and Ammerman and an arrest number (248315) was assigned along with the date of the arrest, *i.e.*, February 5, 2019.   T. 67-69.   Ultimately the defendant was arrested and charged with criminal possession of a narcotic with intent to sell and obstruction of governmental administration for resisting.   T. 96, 101, 109.   *See* Government Exhibit 9A.

### A.  Credibility of the Government Witnesses

In support of the defendant's claim that the testimony of Officers Giarrano and Ammerman should be disregarded as unreliable and/or incredible, the defense provided the decision of the Hon. Paul Wojtaszek, J.S.C. in *People v. Demario Robbins* (Defendant's Exhibit A) wherein Justice Wojtaszek ordered suppression of the use of a weapon as evidence in the trial of the defendant Robbins because the testimony of Officers Ammerman and Giarrano was "at best inconsistent on many important details and at worst, apparently tailored to overcome constitutional objections."   Justice Wojtaszek further stated, "Considering the totality of the evidence and the facts and circumstances surrounding the defendant's arrest, the arresting officers' testimony does not strike this Court as credible."   2020 WL5523075 at 4, 5 (2020).   This finding, however, does not mandate that the testimony of Officers Ammerman and Giarrano must be disregarded as being incredible in this proceeding.   This Court must determine the credibility of all of the witnesses at the evidentiary hearing held on August 13, 2021

based on all of the evidence presented in that proceeding as well as considering the demeanor of the witnesses during their testimony in order to make a determination of credibility or lack thereof of each witness.

Although I find the computer recordkeeping process of the BPD as described by Officer Giarrano as troubling and somewhat perplexing, nothing was received in evidence that would indicate or establish that his testimony on this process was either incorrect or incredible.  Nor was any evidence presented that discredited Officer Giarrano's testimony that he reviewed the computer reports or crimes that had occurred during his days off prior to going on patrol duty with his partner Officer Ammerman on February 5, 2019 and that he read the report describing an assault at 28 Norway indicating that the defendant was named as the offender of that assault and the matter was labeled as "investigation pending."  T. 8-12, 15, 64.  Officer Giarrano testified that he shared this report information with Officer Ammerman prior to their going on patrol duty along with a police photograph of the defendant who was named as a suspect in the case.  T. 90-91, 111.  As a result, the officers were prepared to keep a lookout for the defendant as they conducted their patrol duties in the neighborhood of 28 Norway, Buffalo, New York which was located in their patrol assignment, *i.e.*, C District of the City of Buffalo.  The defendant was observed in the vicinity of 28 Norway by the officers and was arrested on the "assault charge" of January 30, 2019.  T. 13, 23, 27, 35, 42, 58, 117.  *See also* Government Exhibit 3.

The defendant claims that there is a contradiction as to why Officers Giarrano and Ammerman undertook steps to detain the defendant when they observed him enter an automobile parked on Norway Street, that is, that Officer Ammerman claimed the parked vehicle was approached because of illegally tinted windows and not because of the outstanding assault charge as claimed by Officer Giarrano. The Court accepts Officer Ammerman's testimony that he merely stated to the driver of the parked vehicle that they "were [there] because your windows are too dark" as a safety precaution because the passenger in the vehicle "was involved in a violent crime" in order "to keep it calm and peaceful." T. 93-94.

Having Observed the demeanor of both Officer Giarrano and Officer Ammerman during their testimony, and considering Government Exhibit 3, I find the testimony of both officers to be credible and accept it for purposes of resolving defendant's motion to suppress the use of evidence seized from him on February 5, 2019.

### B.  The Arrest of the Defendant on February 5, 2019

There is no question that the police officers arrested the defendant on February 5, 2019 without an arrest warrant. However, the "necessary inquiry [is] not whether there was a warrant or whether there was time to get one, but whether there was probable cause for the arrest." *United States v. Watson*, 423 U.S. 411, 417

7

(1976).  "The usual rule is that a police officer may arrest without warrant one believed by the officer upon reasonable cause to have been guilty of a felony . . . ."  *Carroll v. United States*, 361 U.S. 98 (1925); *United States v. Watson, supra* at 417.  As stated by the United States Supreme Court:

> To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause, Ornelas, supra, at 696, 116 S.Ct. 1657.

*Maryland v. Pringle*, 540 U.S. 366, 371 (2003); *Ornelas v. United States,* 517 U.S. 690, 696 (1996).

As the Court of Appeals for the Second Circuit has stated:

> Probable cause exists if a law enforcement official, on the basis of the totality of the circumstances, has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.  *Panetta v. Crowly*, 460 F.3d 388, 395 (2d Cir. 2006)."

*United States v. Howard*, 489 F/3d 484. 491 (2d Cir.), *cert. denied* 552 U.S. 1005 (2007); *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir. 1983); *United States v. Cruz*, 834 F.2d 47, 50 (2d Cir. 1987), *cert. denied* 484 U.S. 1077 (1988).

Officer Giarrano testified that he became aware of an outstanding assault case when he reviewed the BPD computer reports on February 5, 2019 before he and his patrol partner, Ronald Ammerman, began their patrol duties in the C District of the City of Buffalo.   More specifically, he saw that there was a complaint made on January 30, 2019 by a named victim who stated that he was assaulted by Devante Nance who hit him with a hammer while he was shoveling snow at 28 Norway in the City of Buffalo. *See* Government Exhibit 3.   Officer Giarrano searched the name Devante Nance on the police computer and pulled up a police photograph of him.   *See* Government Exhibit 4.   At the time of this police report review by Officer Giarrano on February 5, 2019, the status of the assault case was described as "investigation pending" and the charge was a felony assault.   T. 12, 15, 16-17, 64.   This information contained in the BPD computer records formed the basis for Officers Giarrano and Ammerman to believe that there was probable cause for them to arrest the defendant should they encounter him during the course of their patrol duties in the C District on February 5, 2019.   When Officers Giarrano and Ammerman observed the defendant walking in the vicinity of 28 Norway on February 5, 2019, they undertook police procedures to effectuate his arrest.   It is pointed out that police officers may base probable cause for making an arrest on a victim's description or identification of his assailant.   *Jenkins v. City of New York*, 478 F.3d 76, 90 (2d Cir. 2007).   Furthermore, it was objectively reasonable for Officers Giarrano and Ammerman to rely on the BPD computer base of records.   *See Arizona v. Evans*, 514 U.S. 1 (1995); *United States v. Santa*, 180 F.3d 20, 27 (2d Cir. 1999).   Their motivation for arresting the defendant is irrelevant to the

9

question of probable cause since the standard is not a subjective one.   *Mazzochi v. Borden*, 959 F.2d 1174, 1179-1180 (2d Cir. 1992); *Lee v. Sandberg*, 136 F.3d 94, 103, n. 5 (2d Cir. 1997).

Based on the testimony of Officers Giarrano and Ammerman and the other evidence received at the evidentiary hearing, I find that there was legal probable cause for the officers to make an arrest of the defendant on February 5, 2019.

### C.  The Search of the Defendant and His "Satchel"

As Officer Giarrano testified, he placed the defendant under arrest on the assault charge on February 5, 2019.   T. 12-13, 27, 35, 58.   As part of the arrest of the defendant, the police officers had a right to search the person of the defendant including the "satchel" that he was wearing across his chest.   T. 23-24.

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the

10

arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

*Chimel v. California*, 395 U.S.752, 762-763 (1969); *United States v. Robinson*, 414 U.S. 218, 224 (1973*); Agnello v. United States*, 269 U.S. 20, 30 (1925); *United States v. Hayes*, 553 F.2d 824, 826 (2d Cir.), *cert. denied* 434 U.S. 867 (1977).

### D. The Defendant's Claim of Violation of Article I, Section 12 of the New York State Constitution

The defendant argues that "as a result of police action, [he] was illegally detained and subjected to a forcible search in violation of the rights afforded him under . . . Article I, Section 12 of the New York State Constitution and the evidence seized from him should be suppressed." Dkt. #185, pp. 9-10.

This claim is rejected in its entirety. The United States Supreme Court has expressly stated that "whether or not a search is reasonable within the meaning of the Fourth Amendment" is "never depended on the law of a particular state in which the search occurs." *California v. Greenwood*, 486 U.S. 35, 43 (1988); *Virginia v. Moore*, 553 U.S. 164, 172 (2008); *Whren v. United States*, 517 U.S. 806 (1966).

11

## **CONCLUSION**

Based on the foregoing, it is recommended that the defendant's motion seeking to suppress the use of the evidence seized from him on February 5, 2019 be in all respects denied.

It is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  See, e.g., *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.**  *Thomas v. Arn*,

474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

DATED:	Buffalo, New York
	May 18, 2022

					*S/ H. Kenneth Schroeder, Jr.*
					**H. KENNETH SCHROEDER, JR.**
					**United States Magistrate Judge**

13