UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

*Plaintiff*,

vs.

Case No. 20-CR-29-RJA-HKS-4

RODNEY PIERCE,

*Defendant*.

---

**DEFENDANT RODNEY PIERCE'S APPEAL FROM THE DECISION AND ORDER AND OBJECTIONS TO THE REPORT AND RECOMMENDATION**

Defendant Rodney Pierce ("Mr. Pierce" or "Defendant"), by and through his attorneys, Lipsitz Green Scime Cambria LLP, Barry Nelson Covert, Esq., hereby submits the instant objections to the rulings contained in the Decision and Order ("D&O"), issued on November 9, 2022 (*see* Doc. 477), denying reconsideration of the recommendations contained in the November 24, 2021 Report, Recommendation, and Order ("R&R") (*see* Doc. 305). The warrantless stop of a vehicle operated by Mr. Pierce, the warrantless search of that vehicle, and the warrantless arrest of Mr. Pierce violated his Fourth Amendment rights. At a minimum, a suppression hearing was needed to resolve numerous conflicts of disputed material facts.

Critically, in denying reconsideration of the recommendation to deny suppression and the request for a suppression hearing, the Magistrate Judge overlooked controlling law, and ignored clear evidentiary contradictions that mandated the need for a hearing. In particular, the centerpiece of the government's justification for the traffic stop was an affidavit of a law enforcement officer who had no first-hand knowledge of the investigation, and who, among other things, misstated the contents of communications between Mr. Pierce and the informant, and averred as to Mr. Pierce's subjective intent on a material matter – which was vigorously contested by Mr. Pierce, the only

person with knowledge of his subjective intent. Although the record clearly supports suppression of any and all evidence obtained as a result of the warrantless traffic stop, at a minimum, the Magistrate Judge should have conducted an evidentiary hearing to resolve these pivotal inconsistencies. Finally, there has been no ruling on Mr. Pierce's motion to controvert the search warrants for the seized cellular phones on the basis that the 34-day delay between seizing the phones and obtaining the warrant was unreasonable. As set forth in greater detail below, Mr. Pierce respectfully requests that this Court reject the findings and recommendations of both the D&O and R&R concerning suppression.

## BACKGROUND

This case began with the government filing a criminal complaint against Mr. Pierce, and co-Defendant David Burgin, charging Mr. Pierce with one count of conspiracy to possess, with intent to distribute, 500 or more grams of cocaine, in violation of 21 U.S.C. § 841 (a)(1), (b)(1)(B). (*See* Doc. 1).[1] The government sought its complaint based on the February 20, 2020 Affidavit ("Affidavit") of Special Agent Thomas J. Webb ("SA Webb"). (*See* Compl. & Aff., Doc. 1, *United States v. Burgin*, W.D.N.Y. Case No. 20-MJ-30 (now consolidated in *United States v. Washington*, W.D.N.Y. Case No. 20-CR-29A).)

In the Affidavit, SA Webb affirmed the following details as "necessary to establish" the requisite probable cause to obtain the criminal complaint against Mr. Pierce:

---

1 Subsequently, a grand jury sitting in this District issued a 22-count Superseding Indictment on April 16, 2020, which named Mr. Pierce in Counts 1 and 7-13. (*See* Doc. 24). Specifically, Mr. Pierce was charged with Conspiracy to Possess with Intent to Distribute Controlled Substances (21 U.S.C. §§ 846); Possession of 500 Grams or More of Cocaine with Intent to Distribute (21 U.S.C. §§ 841(a)(1), (b)(1) (B); 18 U.S.C. § 2) (two counts); Possession of Fentanyl and Acetyl Fentanyl with Intent to Distribute (21 U.S.C. §§ 841(a)(1), (b)(1) (D); 18 U.S.C. § 2); Possession of 28 Grams or More of Cocaine Base with Intent to Distribute (*Id.*); Possession of Marijuana with Intent to Distribute, Maintaining a Drug Premises (21 U.S.C. §§ 856; 18 U.S.C. § 2); and Possession of Firearms in Furtherance of Drug Trafficking (21 U.S.C. §§ 841(a)(1),)(1)(A); 18 U.S.C. § 2).

- On February 19, 2020, the Erie County Sheriff's Office executed search warrants as part of a narcotics investigation, which resulted in the seizure of narcotics, cash, and firearms from the target of the investigation. The target agreed to work as a confidential informant ("CI"). The target purportedly stated that he obtained his cocaine from co-defendant David Burgin and Mr. Pierce.
- The target agreed to participate in monitored and recorded calls and texts with the number purportedly associated with Mr. Pierce, during which Mr. Pierce allegedly "agreed to deliver a kilogram of cocaine" to the target at a pre-arranged meeting place, an Auto Zone located in the City of Buffalo.
- Mr. Pierce purportedly arrived at the Auto Zone in a Dodge Caravan, and saw a marked police car, which "resulted in PIERCE departing the area," at which point he then drove to a home located at 56 Grimes. He entered the home, texted with the target a while later, and then returned to the Auto Zone.
- Upon return to the Auto Zone, his car was stopped, and he was immediately arrested, even though no drug transaction had yet occurred.
- After arresting Mr. Pierce, law enforcement searched his vehicle, where they found, among other things, two cell phones.
- On that same day, February 19, 2020, law enforcement obtained a warrant to search the home located at 56 Crimes. The search resulted in seizure of drugs, guns, and cash, among other things.

(*See id*. ¶¶ 3-13.)

On March 24, 2020, the government obtained a search warrant to search the seized cell phones.

On November 13, 2020, Mr. Pierce filed an Omnibus Motion seeking various forms of relief, including suppression of the evidence obtained from the warrantless stop of the vehicle Mr. Pierce was operating, the warrantless search of Mr. Pierce and the vehicle, any evidence obtained from the seizure of two cell phones stored in the vehicle, and any and all derivative evidence. (*See* Doc. 188). Mr. Pierce also moved to controvert the search warrant issued on March 24, 2020 authorizing the examination of two red Apple iPhones seized during the unlawful search of his vehicle. (*See* Docs. 207, 214). With respect to the warrantless traffic stop, Mr. Pierce asserted that warrantless stops are per se unreasonable, particularly when law enforcement has the time to obtain a warrant, but fails to do so, and that law enforcement lacked probable cause for the traffic stop because there was no evidence that he violated any vehicle or traffic laws and the confidential informant's information, alone, was insufficient. (*See* Doc. 188 at 4-7.)

Subsequently, Mr. Pierce moved to controvert the search warrants for the cellular phones on the basis that the government's unreasonable delay of 34 days between seizure of the phones and the warrant application violated Mr. Pierce's Fourth Amendment rights as articulated in *United States v. Smith*, 967 F.3d 198 (2d Cir. 2020). (*See* Doc. 207, 7-10.)

## I. R&R Denies Suppression and Suppression Hearing

In the R&R, the Honorable H. Kenneth Schroeder, Jr., U.S.M.J. (the "Magistrate"), recommended denial of all suppression-related relief. (*See* R&R at 4-14.) First, the Magistrate recommended denial of suppression because the Magistrate found that law enforcement had probable cause to stop Mr. Pierce's vehicle. (R&R at 5-7.) In reaching that conclusion, the Magistrate relied on SA Webb's Affidavit, noting that law enforcement monitored calls and texts between Mr. Pierce and the CI that involved "an arrangement for the sale and purchase of cocaine . . . at an agreed upon meeting place." (R&R at 5; *see also id*. at 2 (noting "an agreement that [Mr.

Pierce] would deliver a kilogram of cocaine").) Further, law enforcement observed Mr. Pierce" leave his residence and drive to the location," where he was arrested. (*Id*.) The Magistrate also noted, in the initial factual recitation, that, "[b]ecause an unrelated marked Buffalo Police patrol unit drove into the area" of the meeting place, Mr. Pierce initially "left" the meeting place and drove to 56 Grimes Street, a location that the Magistrate referred to as Mr. Pierce's "residence." (*Id*. at 3.) On this basis, the Magistrate blessed the warrantless stop of the vehicle, which in turn, resulted in the endorsement of law enforcement's subsequent warrantless search of his vehicle and person, warrantless arrest, and the search warrant for the two cell phones found in his vehicle. (*Id*. at 5-12.) The R&R was silent on Mr. Pierce's assertion that the 34-day delay in seeking a warrant to search the seized cell phones was unreasonable.

Second, the Magistrate recommended denial of the suppression hearing. (*Id*. at 13-14.) In reaching this recommendation, the Magistrate pointed to the prior recommendation that there was probable cause to stop the vehicle. (*Id*. at 13.) Although Mr. Pierce had pointed to an inconsistency between the Webb Affidavit and the underlying communications between the CI and law enforcement – namely that, although the Affidavit claims that Mr. Pierce "agreed to deliver a kilogram of cocaine" (Webb Aff. ¶¶ 9-10), there was ***no mention*** of cocaine, money, or the quantity (a kilogram) at issue in ***any*** of those communications – the Magistrate found no need for a hearing. Critically, the Magistrate denied the hearing because Mr. Pierce had not, on top of pointing out this blatant inconsistency, submitted an affidavit denying the existence of the communications or the description of the communications. (*Id*. at 13-14.)

## II. Motion for Reconsideration

On February 8, 2022, Mr. Pierce moved for reconsideration of the R&R. In particular, Mr. Pierce asserted that the R&R contained factual errors, overlooked certain evidence, and

erroneously shifted the burden to Mr. Pierce. (*See* Doc. 346.) In particular, Mr. Pierce asserted that there was insufficient evidence to establish probable cause to stop his vehicle and in ruling otherwise, the Magistrate erroneously shifted the government's burden to Mr. Pierce. (*Id*. at 7-10.) More importantly, Mr. Pierce asserted that the R&R's probable cause finding was premised on several fundamental errors, including that: (1) during the recorded calls and texts between the target and Mr. Pierce, Mr. Pierce entered an "agreement" to "deliver a kilogram of cocaine" to the target (R&R at 2, 5), even though there was no such agreement made, and indeed, no discussion whatsoever of cocaine, cash, or quantity (or any such code words); (2) 56 Grimes – the home Mr. Pierce briefly visited before his arrest and where drugs, cash, and firearms were located – was Mr. Pierce's "residence" (R&R at 3), even though there is nothing in the record to substantiate that claim; and (3) Mr. Pierce drove away from Auto Zone "***[b]ecause*** an unrelated marked Buffalo Police patrol unit drove into the area" (R&R at 3), even though there is no proof of Mr. Pierce's subjective intent in the record, other than Mr. Pierce's own affidavit, in which he stated that the marked car had nothing to do with his decision to leave the Auto Zone. (*See* Doc. 346 at 3-7; Oct. 6, 2022 Pierce Aff. (filed under seal) ¶¶ 14-24.) Finally, Mr. Pierce pointed out that the R&R overlooked his assertion that the 34-day delay between seizure of the cell phones and the government's warrant application was unreasonable. (*See* Doc. 346 at 10-11.)

## III. D&O Denies Reconsideration

In the D&O, the Magistrate denied reconsideration of the recommendations to deny suppression and the suppression hearing. (*See* Doc. 477.) The Magistrate attempted to reconcile the foundational factual errors concerning probable cause. The Magistrate acknowledged that his prior finding that Mr. Pierce drove away from the meeting place upon sight of a marked police vehicle was "erroneous[]," but downplayed that finding – which appeared to have been pivotal to

both the Webb Affidavit and the R&R – as now having "no legal bearing on the Court's finding of probable cause." (*Id.* at 5-6.) It appears that the Magistrate premised probable cause on Mr. Pierce's arrival at the agreed upon meeting place (*see* D&O at 5); but the Magistrate does not address, let alone acknowledge, that meeting someone, even a criminal, on its own, is not reflective of criminality. The Magistrate doubled down on the prior finding that the recorded texts and calls "resulted in an agreement" for "the sale and purchase of a kilo of cocaine" without even acknowledging that there is no such information anywhere in the record. The Magistrate never addressed the lead error that Mr. Pierce identified – the Magistrate's repeated reference to 56 Grimes – the home where large quantities of cocaine, cash, and firearms were found – as Mr. Pierce's "residence" when no one, even SA Webb, made that claim. Finally, the D&O was silent, again, on Mr. Pierce's assertion that the 34-day delay was unreasonable.

**STANDARD OF REVIEW**

Pursuant to 28 U.S.C. 636(b)(1), Fed. R. Crim. P. 58(g)(2), and Local Rule 59, Mr. Pierce objects to and appeals from Magistrate Judge Schroeder's D&O, which denied reconsideration of his prior R&R recommending denial of: (1) the request for an evidentiary hearing on the validity of the warrantless stop, arrest, and search of Mr. Pierce and the vehicle he operated on February 19, 2020; (2) the suppression of evidence derived from the February 19, 2020 search and seizure of Mr. Pierce and his vehicle; and (3) the failure to address Mr. Pierce's motion to suppress the search of the iPhones because the 34-day delay was unreasonable.

A district court reviews any specific objections to a report and recommendation on a dispositive issue, such as a motion to suppress, under a *de novo* standard. *See also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); *United States*

*v. Williams*, 339 F.Supp.3d 129 (W.D.N.Y. 2018). To trigger the *de novo* review standard, objections to a report and recommendation "must be specific and clearly aimed at particular findings in the magistrate judge's proposal." *Molefe v. KLM Royal Dutch Airlines*, 602 F.Supp.2d 485, 487 (S.D.N.Y. 2009).

## ARGUMENT

This Court should reject the denial of suppression and the request for a suppression hearing as recommended in the R&R and reaffirmed by the Magistrate in the D&O.

### I. There is insufficient evidence to establish reasonable suspicion for the warrantless vehicle stop, and probable cause for the immediate arrest of Mr. Pierce.

The sum total of the information on the validity of the warrantless traffic stop and immediate arrest of Mr. Pierce consists of nothing more than: (1) incriminating information about the target of the original investigation, who became the CI, including the CI's possession of cocaine, cash, and firearms; (2) a post-*Miranda* statement from the CI that the CI allegedly obtained his cocaine from co-defendant Burgin and Mr. Pierce; (3) recorded texts and calls between the CI and Mr. Pierce which do not, on their face, indicate criminality of any kind because there was no discussion of cocaine, money, or quantities, or even code words for those subjects; (4) Mr. Pierce's arrival at a meeting place, his departure, his text with the CI about the time of the meeting, and his subsequent return to the meeting place; and (5) Mr. Pierce's immediate arrest upon return to the meeting place, even though no transactions whatsoever had yet occurred between Mr. Pierce and the target, and there was no allegation of a violation of vehicle or traffic law to otherwise justify the stop. (R&R at 5-6; D&O at 3-5 (describing the "key facts" for probable-cause analysis).)

This information establishes neither reasonable suspicion for the warrantless traffic stop nor probable cause for the warrantless arrest. Both the stop and the arrest (and everything that followed) violated Mr. Pierce's Fourth Amendment rights.

### A. Warrantless stops and arrests are per se unreasonable and must be justified by undisputed proof establishing probable cause for the intrusion.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. "It is well established that warrantless searches and seizures are *per se* unreasonable under the Fourth Amendment unless they fall within one of several recognized exceptions." *United States v. Casado*, 303 F.3d 440, 443 (2d Cir. 2002).

Because a traffic stop constitutes a "seizure" under the Fourth Amendment, *Whren v. United States*, 514 U.S. 806, 809-10 (1996), a stop "must satisfy the Fourth Amendment's reasonableness limitation, which 'requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity.'" *United States v. Gomez*, 877 F.3d 76, 86 (2d Cir. 2017) (quoting *United States v. Stewart*, 551 F.3d 187, 191 (2d Cir. 2009)). Reasonable suspicion must be "supported by articulable facts that criminal activity may be afoot," and it cannot be based upon "inchoate suspicion or mere hunch." *United States v. Freeman*, 735 F.3d 92, 96 (2d Cir. 2013) (quoting *United States v. Bayless*, 201 F.3d 116, 132-33 (2d Cir. 2000)). While a court should evaluate the totality of the circumstances "through the eyes of a reasonable and cautious police officer on the scene, guided by [their] experience and training," it should not "merely defer to the police officer's judgment." *Id.* (quoting *Bayless*, 201 F.3d at 133).

An arresting officer must have probable cause to believe a crime has been or is being committed for a warrantless arrest to be reasonable under the Fourth Amendment. *See Devenpeck*

*v. Alford,* 543 U.S. 146, 152 (2004); *United States v. Watson,* 423 U.S. 411, 417 (1976). Probable cause exists where the arresting officer, under the totality of the circumstances, has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *United States v. Steppello*, 664 F.3d 359, 363–64 (2d Cir. 2011); *Walczyk v. Rio,* 496 F.3d 139, 156 (2d Cir. 2007). "To determine whether an officer had probable cause to arrest an individual, [the court] examine[s] the events leading up to the arrest, and then decide[s] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause[.]" *United States v. Livingston*, 191 F. Supp. 3d 334, 339 (D. Vt. 2016) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

Finally, it is well-settled that, "[t]he government bears the burden of proving, by a preponderance of the evidence, that reasonable suspicion existed for a stop." *United States v. Bristol*, 819 F. Supp. 2d 135, 142 (E.D.N.Y. 2011) (quoting *United Stewart*, 604 F. Supp. 2d 676, 680 (S.D.N.Y. 2009)). Similarly, with respect to a warrantless arrest, "[t]he [g]overnment bears the burden of proof as to establishing probable cause." *United States v. Delossantos*, 536 F.3d 155, 158 (2d Cir. 2008).

**B. There can be no probable cause when certain facts that SA Webb identified as "necessary to establish" probable cause were undisputedly false.**

There is no basis for finding probable cause for the warrantless traffic stop or the warrantless arrest. In the R&R, the Magistrate expressly relied on SA Webb's Affidavit to set forth the basis for his probable-cause analysis and recommendation. (R&R at 2 n.1.) Critically, SA Webb stated that all of the facts in the Affidavit were "necessary to establish" the requisite "probable cause." (Webb Aff. ¶ 3.) The problem with the Magistrate's reliance on the Webb

Affidavit is that it contained error after error, likely because SA Webb was not involved with the investigation and did not witness any of the events discussed in the Affidavit.

For example, SA Webb repeatedly stated that, in the recorded texts and calls, Mr. Pierce "agreed to deliver a kilogram of cocaine." (Webb Aff. ¶¶ 9-10.) That was false. There was no discussion of cocaine, kilograms, or cash, or any code words for those words on the undisputed transcripts of the recorded calls and texts. (*See*Doc. 346; Doc. 464 ("Pierce Aff.")) Instead, the calls and texts discuss mundane matters like traffic and carpooling. (*See* Pierce Aff. at 5-7.) Further, SA Webb led the Magistrate to believe that the presence of a marked police vehicle at the meeting place "result[ed] in" Mr. Pierce "departing the area." (Webb Aff. ¶ 10.) There is no proof of Mr. Pierce's subjective intent to back up that claim, and Mr. Pierce has vigorously disputed this mischaracterization of his subjective intent. (*See* Pierce Aff. at 3-4, 7-8.) Because these facts that SA Webb described as "***necessary to establish***" probable cause were false, the Magistrate's reliance on the Webb Affidavit demonstrates that there was no basis for the warrantless traffic stop or arrest.

The impact of those errors on the validity of the Magistrate's probable-cause finding is compounded by an error entirely of the Magistrate's – the repeated reliance upon the mistaken conclusion that the home located at 56 Grimes was Mr. Pierce's "residence." (R&R at 3, 5, 11.) Not only is there nothing to support the claim that this home was Mr. Pierce's "residence," the criminal complaint identifies the home as belonging to co-Defendant Burgin, ***not Mr. Pierce***. Even though this error was the lead point on reconsideration (*see* Doc. 346 at 3), the D&O was silent as to the significance of this foundational fact, which simply was not true, to the Magistrate's analysis.

**C. The facts purportedly indicative of criminality do not support a finding of probable cause on their own or in combination.**

In both the R&R and the D&O, the Magistrate relied upon facts that, on their own, or in combination, do not establish probable cause. It is undisputed that the recorded texts and calls do not reflect criminality of any kind. Mr. Pierce's agreement to meet someone, even a criminal, after those communications about topics such as traffic and carpooling woes, does not reflect criminality. There was no basis to designate 56 Grimes – a stash house – as Mr. Pierce's "residence," and the claims of an arrestee, which were not vetted through a hearing, are too unreliable to provide support for probable cause.

**1. The recorded texts and calls do not, on their face, involve criminality of any kind, as the Magistrate erroneously claimed**.

One fact foundational to the Magistrate's recommendation is the Magistrate's belief that the recorded calls and texts evidenced "an agreement" for "the sale and purchase of a kilo of cocaine" (D&O at 4; R&R at 4.) That belief was in error. To the contrary, the transcripts of the calls and copies of the text messages, attached to Mr. Pierce's Affidavit (filed under seal on October 6, 2022), do not discuss cocaine, money, drug quantities, offers, or sales. Instead, the plain face of those communications constitute nothing more than ramblings or small talk about every day topics such as traffic and carpooling, among other things. (*See id*.) It is not illegal to make small talk with someone known to the government to be a criminal. It is not illegal to make plans to meet someone known to the government to be a criminal. The conversations do not, in any way, indicate that Mr. Pierce agreed or intended to sell the target drugs or engage in illegality of any kind, and cannot provide the basis for the Magistrate's probable-cause finding.

As the Supreme Court has repeatedly held, all speech is presumptively protected, *see Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255 (2002), unless is falls within one of the

limited exceptions to the First Amendment as recognized by the Court, *see United States v. Stevens*, 559 U.S. 460, 468-69 (2010). Although the government may believe that the recorded texts and calls were speech integral to a crime, the plain face of those calls does not evidence criminality of any kind. It is well-settled that the government may not presume that protected speech is unprotected, even if the speech at issue "resembles" speech that falls within an exception. *Ashcroft*, 535 U.S. at 255. Instead, the burden of proving that speech is unlawful ***always*** falls to the government. *See United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions."); *id.* at 818 ("When First Amendment compliance is the point to be proved, the risk of nonpersuasion . . . must rest with the Government, not with the citizen."); *Bd. of Trs. v. State Univ. of N.J. v. Fox*, 492 U.S. 469, 480.

Because the speech at issue was facially lawful, the Magistrate erred not only in relying on the speech to make the probable-cause determination, but in mischaracterizing it when it is undisputed that the speech did not even mention the terms kilogram, cocaine, or money. The government must carry the burden of showing this facially lawful speech is somehow unprotected expression, which the government has not done.

**2. The Magistrate erred in ruling that meeting someone, without more, reflects criminality.**

One of the starkest errors in the Magistrate's analysis is the repeated claim that Mr. Pierce agreeing to meet the target and arriving to meet the target reflects criminality. (D&O at 5 ("What is of substance is the fact that [Mr. Pierce] came to the prior agreed upon location . . . at the agreed upon time."), 8 (Mr. Pierce "did come to the Auto Zone.").) If there was any proof that the target and Mr. Pierce agreed to the sale, Mr. Pierce's arrival may possibly be indicative of criminality. However, because there is no proof that they actually reached such an agreement, and indeed, none

of the recorded texts or calls reflect such an agreement, it was an error to cast aspersions on this meeting. Agreeing to meet someone, and meeting them, even if they are a known criminal, is not an indication, of any kind, that criminality is afoot. *See e.g. Holeman v. City of New London*, 425 F.3d 184, 190 (2d Cir. 2005) ("An 'individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime[.]'" (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)); *United States v. Buenaventura–Ariza*, 615 F.2d 29, 36 (2d Cir. 1980) ("There must be other objective facts which, when viewed in conjunction with nervous behavior . . . raise the complex of conduct to a level justifying reasonable suspicion of criminal activity." (footnote omitted)); *United States v. Bristol*, 819 F. Supp. 2d 135, 142-44 (E.D.N.Y. 2011) (suppressing evidence and recognizing that innocuous behavior, such as passengers riding in the backseat of a car, even if characteristically associated with a particular activity, such as unregistered operation of transportation services, is not enough for reasonable suspicion of a traffic violation).

**3. The Magistrate had no basis to designate 56 Grimes – a stash house – as Mr. Pierce's "residence."**

Another critical error – foundational to the Magistrate's finding of probable cause and/or reasonable suspicion – is the Magistrate's unsupported conclusion that the home located at 56 Grimes – a stash house – was Mr. Pierce's "residence." The R&R repeatedly stated that 56 Grimes was Mr. Pierce's "residence" (R&R at 3, 5, 11.) However, as noted in the motion for reconsideration, ***there was no evidence before the Magistrate to support this conclusion***. (*See* Doc. 346 at 3-4.) SA Webb did not identify the home as being associated with Mr. Pierce in any way. More importantly, Count 2 of the criminal complaint alleges that co-Defendant David Burgin, ***not Mr. Pierce***, "use[d] and maintain[ed] a place, that is 56 Grimes Street." (*See* Doc. 1, Count 2, *United States v. Burgin*, W.D.N.Y. Case No. 20-MJ-30.) There was no evidence before

the Magistrate that supported this finding. It was an erroneous finding and the Magistrate's silence on this error in the D&O further undermines confidence in the probable-cause analysis.

**4. The Magistrate erroneously found that SA Webb's reliance on Mr. Pierce's departure from the meeting place was not significant.**

The Magistrate erred in relying on Mr. Pierce's departure from the meeting point in establishing probable cause. (*See* R&R at 4). Mr. Pierce's subjective intent is in dispute. (*Compare* SA Webb Aff. ¶ 10; *with* Pierce Aff. ¶ 23.) There can be no credibility determination on this fact without a hearing. More importantly, although the D&O states that consideration of this fact was not necessary to the Magistrate's probable-cause determination (D&O at 5), that cannot not stand because SA Webb, himself, identified that erroneous and disputed fact as "necessary to establish" probable cause. (SA Webb Aff. ¶ 10).

**5. The Magistrate's entire analysis comes down to the fact that the informant claimed to have purchased cocaine from Mr. Pierce in the past, but there was no analysis of the informant's reliability, and every reason to believe he would say anything necessary to save his skin.**

The Magistrate erred in blindly accepting the statements of the target as true, without any information to assess the target's reliability, when, as here, the entire basis for probable cause rests on the statements of an informant. "The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable." *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993). "Often the information needed to supply probable cause is not gathered independently by police officers but instead is provided by professional criminal informants[.]" *United States v. Gagnon*, 373 F.3d 230, 236 (2d Cir. 2004). In evaluating an informant's reliability, a court must consider the totality of the circumstances, including the informant's veracity, reliability, and basis of knowledge, and "whether the information an informant provides is corroborated by independent police investigation[.]" *Id.* (citation

omitted); *see also Illinois v. Gates*, 462 U.S. 213, 230 (1983) (holding "an informant's veracity, reliability and basis of knowledge are all highly relevant in determining the value of his report[,]" (quotations omitted)).

While the D&O did not make an explicit finding as to the CI's reliability, it determined that law enforcement had "reasonably trustworthy information" to believe that Mr. Pierce had engaged in criminal activity because: (1) the CI had been arrested for cocaine possession following the execution of a search warrant for his residence; (2) the CI made post-*Miranda* statements to police that implicated Mr. Pierce in the sale of narcotics; (3) the CI had Mr. Pierce's phone number and was able to communicate with him in their presence; and (4) Mr. Pierce agreed to meet the CI and did, in fact, arrive at the meeting place. (*See* D&O at 8).

First, the Webb Affidavit does not clearly establish the basis of the CI's knowledge regarding Mr. Pierce's involvement in facilitating narcotics transactions. It does not set forth any facts regarding the CI's personal observations of Mr. Pierce as a drug courier or detail any prior experience with him except that "he contacts Pierce to place the order." (Webb Aff. ¶ 8.) *See e.g., United States v. Gifford*, 727 F.3d 92, 100 (1st Cir. 2013) (finding information insufficiently reliable where "[n]othing in the affidavit indicates the informant's basis of knowledge, for example, on whether the informant just happened to view the grow operation, heard about it as hearsay, or had direct, first-hand knowledge of the grow operation in the [defendant's] home"); *United States v. Higgins*, 557 F.3d 381, 390 (6th Cir. 2009) (finding no probable cause for the issuance of a search warrant where, inter alia, "the affidavit [did not] contain any assertion that the informant had been inside the [suspect's] apartment or that the informant had seen drugs or other evidence in or around [the suspect's] apartment").

The lack of clarity as to the CI's source of information is underscored by the affidavit's failure to indicate whether the CI provided any description of Mr. Pierce or the vehicle he was operating on February 19, 2020, or whether the CI positively identified Mr. Pierce when he first arrived at the AutoZone parking lot that day. *See e.g., United States v. Livingston*, 191 F. Supp. 3d 334, 342-43 (D. Vt. 2016) (noting the lack of sufficiently specific information regarding the drug trafficker's description as a factor weighing against the CI's reliability for purposes of establishing probable cause to arrest).

Second, SA Webb's affidavit failed to adequately corroborate the information the CI provided. *See United States v. Clark*, 638 F.3d 89, 98 (2d Cir. 2011) (refusing to find the "conclusory" mention of surveillance as corroborative of an informant's tip); *accord United States v. Rocha-Gomez*, 412 F. Supp. 3d 369, 375-76 (S.D.N.Y. 2019) (discussing the inadequacies of the affidavit, which established the CI's basis of knowledge, but "offered little regarding [the CI's] reliability or how the HIS agents sought to corroborate his information").

Finally, there is no background information about the CI, such as previously providing credible information, the informant's motivation concerning cooperation, what the informant stood to gain by cooperation, or prior convictions, all of which has been found to shed light on the reliability of an informant. *See, e.g.*, *Rocha-Gomez*, 412 F. Supp. 3d at 374-76 (concluding that it was "problematic" to assessing reliability when the affidavit failed to provide background information about the informant).

## II. Because there was no probable cause for the stop or the arrest, the Magistrate erred in denying suppression of all of the derivative evidence.

It is well-settled that, if the government fails to satisfy its burden at the initial intrusion, any and evidenced derived from the initial intrusion must be stopped. *See Wong Sun v. United States*, 371 U.S. 471, 484–88 (1963); *United States v. Harrell,* 268 F.3d 141, 148 (2d Cir.

2001) ("Evidence seized based on an unreasonable traffic stop 'is subject to the poisonous tree doctrine, and may be suppressed.'"). Here, because the government failed to establish probable cause for the warrantless traffic stop and arrest, the Magistrate erred in denying suppression of all derivative evidence, including evidence obtained from the search of Mr. Pierce, the search of his vehicle, the search of the two cell phones obtained from his vehicle, and the search of the home located at 56 Grimes.

But, even if there somehow was probable cause for the warrantless traffic stop and arrest, the Magistrate's determination on the validity of the search warrants for the two cellular phones seized from the vehicle was based on a fatal error. In addition to basing his determination on the erroneous belief that the recorded texts and calls included an agreement "for the sale and purchase of illegal drugs," the Magistrate found that the seizure of "a number of weapons, 2.35 kilograms of suspected cocaine, 17.5 pounds of marijuana, 114 grams of fentanyl, drug paraphernalia and approximately $250,000 USD" from Mr. Pierce's "***residence at 56 Grimes***" established the requisite probable cause for search of the phones. (R&R at 11-12.) The Magistrate's reliance upon those "facts" constitutes an insurmountable error – the identification of a stash house full of drugs, guns, and cash as Mr. Pierce's "residence" – renders the probable-cause per se determination invalid. If your house is full of drugs, guns, and cash, then of course your cell phone may very well contain proof of criminality. ***But that's not what happened here***. 56 Crimes is not Mr. Pierce's house. On the basis of this error, alone, this Court should reject the recommendation of denial of suppression of the evidence obtained from the cell phones.

**III. This Court should reject the Magistrate's recommendation to deny the suppression hearing because Mr. Pierce has identified inconsistencies and disputed facts.**

At a minimum, the Magistrate erred in denying the request for a suppression hearing. A suppression hearing is necessary when the defendant demonstrates that there are conflicts in the

evidence necessary to resolve suppression. *See United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992) (an evidentiary hearing on a motion to suppress is required when "the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question"); *see also United States v. Hamilton*, 538 F.3d 162, 168 (2d Cir. 2008) ("If the asserted facts, or the inferences to be drawn from them, [are] contested, the court would need to hold a hearing to determine the contested issues." (emphasis added)). A hearing is needed when the defendant demonstrates that "(1) the warrant affidavit contained a false statement; (2) the false statement was included intentionally or recklessly; and (3) the false statement was integral to the probable cause finding." *United States v. Bowman*, 2020 WL 3473849, at *3 (W.D.N.Y. May 27, 2020) (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).

Here, a hearing was needed for several reasons. First, as discussed in greater detail above, the Webb Affidavit contains statements about the recorded calls and texts that were inconsistent with the transcripts of those communications. *See United States v. Benacquista*, 2009 WL 1651458, at *6-7 (W.D.N.Y. Jun. 8, 2009) (recommending hearing concerning misstatement in law enforcement affidavit), adopted in full, 2009 WL 2568448, at *1 (W.D.N.Y. Aug. 19, 2009).

Second, Mr. Pierce has disputed SA Webb's characterization of him as driving away from the meeting place as the "result" of seeing a marked police car. (*Compare* Webb Aff. ¶ 10; *with* Pierce Aff. (filed under seal) at ¶ 23.) The Magistrate relied on SA Webb's mischaracterization of Mr. Pierce's subjective intent and should not have done so without a hearing. Notably, a hearing is required when the issue is defendant's subjective intent. *See United States v. Pena*, 961 F.2d 333, 337-338 (2d Cir. 1992) (remanding for hearing to determine whether the defendant had the subjective interest of privacy in the vehicle to be searched).

Finally, the D&O incorrectly placed the burden on Mr. Pierce to establish the need for an evidentiary hearing on the validity of the warrantless conduct by law enforcement, instead of on the government. This case involved three warrantless intrusions – the traffic stop, the arrest, and the vehicle search – a factor that is particularly significant to the reasonableness inquiry under the Fourth Amendment. In the context of a warrantless intrusion, Mr. Pierce had the initial "burden of showing that he had a reasonable expectation of privacy in the place or object searched," *United States v. Sparks*, 287 F. App'x 918, 919 (2d Cir. 2008), which he satisfied. (Pierce Aff. ¶¶ 5-12.) The burden then shifted "to the government to show that its evidence is not tainted." *United States v. Bayless*, 921 F. Supp. 211, 213 (S.D.N.Y. 2011) (quoting *United States v. Bonillo-Romero*, 836 F.2d 39, 45 (1st Cir. 1987)). As such, the D&O erred in making the probable-cause determination without a hearing where the government bore the burden of proving the validity of the intrusion.

**IV. There has been no ruling on the reasonableness of the 34-day delay from seizure of the cell phones to obtaining a warrant to search them.**

As discussed above, Mr. Pierce moved to controvert the search warrants for the cellular phones on the basis that the government's unreasonable delay of 34 days between seizure of the phones and the warrant application violated Mr. Pierce's Fourth Amendment rights as articulated in *United States v. Smith*, 967 F.3d 198 (2d Cir. 2020). (*See* Doc. 207, 7-10.) There has been no ruling on this motion, which is an error.

**CONCLUSION**

For the foregoing reasons, Mr. Pierce respectfully requests that this Court reject the recommendations found in the R&R and subsequently re-adopted in the D&O. The warrantless traffic stop and arrest were per se unreasonable under the Fourth Amendment. All derivative evidence should have been suppressed. At a minimum, a suppression hearing was required to clarify inconsistencies in the government's proof and to resolve disputed material facts.

DATED: January 6, 2023
Buffalo, New York

Respectfully submitted,

LIPSITZ GREEN SCIME CAMBRIA LLP

/s/Barry Nelson Covert
BARRY N. COVERT, ESQ.
*Attorney for Defendant, RODNEY PIERCE,*
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Phone: (716) 849-1333
Fax: (716) 855-1580
E-mail: bcovert@lglaw.com